## DANBURY CORNET BAND v. BEAN.

The plaintiffs and the defendant associated themselves together under the name of the Danbury cornet band, but not as a corporation. They adopted and subscribed certain by-laws, one of which was as follows : " If any member shall leave the band, he leaves all his interest with the band." Musical instruments for the use of the members were bought by the association, one of which was intrusted to the defendant for use. The defendant voluntarily withdrew from the association, taking with him said instrument, which he refused to surrender upon demand made for the same. *Held*, that trover for the same might be maintained by the remaining members of the association against him.

TROVER for a musical instrument. After entry in court, the action was referred by agreement of the parties, under a rule of court, to a referee, who reported as follows :

" The suit is trover for an ' E flat cornet ' of the alleged value of $25. The writ is dated March 1, 1873, and is brought by the plaintiffs, who are described as ' an association under the name and style of the Danbury Cornet Band.' Plea, the general issue. It was admitted that the association bought its musical instruments, among which was the one in controversy ; and when the band played the defendant used this instrument, and when he left he carried it away with him. It appeared in evidence that the plaintiffs, nine in number, with the defendant, associated themselves together under the name of the Danbury Cornet Band. It was not claimed that they had taken any steps to organize as an association under the statute ; but on or about the first day of February, 1872, the association, made up of the plaintiffs and defendant, met and elected a leader, clerk, treasurer, and director, and they passed, and all signed, certain by-laws to govern their action, among which are the following : *Second.* ' If any member shall leave the band, he leaves all his interest with the band.' *Third.* ' If any member of the band, through carelessness or neglect, damages any instrument belonging to said band, he must be responsible for the same.' *Fourth.* ' In all matters of business that may come before the board, a two-thirds vote is required.' *Eighth.* ' Each member of the band shall keep his instrument clean and in order.' *Ninth.* ' If any member of the band violates any of these by-laws, he shall pay to the treasurer of the band twenty-five cents for each and every offence.'

"At a meeting of the band, held about the first of December, 1872, the defendant presented a bill for music which he claimed he had furnished, and a few other items, amounting in all to some $5.50, which he claimed should be paid to him from the common funds. There was some difference of opinion among the members as to paying this bill, and finally a majority voted not to pay it. Thereupon the defendant, who was chairman, left his position and with-

drew from the meeting.   In reply to interrogatories by other members,
he said he had left, and should not meet with them until his claim was
settled.   One member remonstrated against his right to carry away the
instrument in question.   The defendant, however, immediately left, tak-
ing the instrument with him, and has not met or played with the mem-
bers since.   At the time of leaving, no particular reason was assigned
for carrying away the instrument.   Both the record and the oral testi-
mony showed that Bean was both leader and director of the band,
from its organization up to the time the vote was taken not to pay him;
also, that by virtue of his said offices he had contracted similar bills
before the present, which the band had paid without objection, and
made this contract in the same way.   After leaving as aforesaid, some
proceedings were had which resulted in his expulsion from the associa-
tion by a vote of its members ; but I do not find the defendant took any
part in these proceedings, nor were they such of themselves as would
have bound him if he had claimed his right of membership.   Before
the commencement of this suit, and after his withdrawal and the vote
of expulsion as aforesaid, a demand was made upon the defendant for
the instrument, which he declined to give up until he was paid his bill.
The defendant denies that the suit can be maintained.   By the terms
of the agreement to refer, the cause is to be decided on legal principles.
I, therefore, in accordance with the request of the parties, submit the
aforesaid finding to the court for its determination of the questions of
law arising thereon.   If in the opinion of the court the action can be
sustained, I find the plaintiffs entitled to recover damages in the sum
of twenty dollars, with interest from the date of the writ, and costs of
reference taxed at twelve dollars and seventy-five cents, and costs of
court to be taxed by the court.   But if the action cannot be maintained,
then I find the defendant entitled to recover of the plaintiffs costs of
reference taxed at seventy-five cents, and costs of court to be taxed by
the court."

The original writ may be referred to.   The questions of law raised
by the report were reserved.

*Norris,* for the plaintiffs.

*Shirley,* for the defendant.

ISAAC W. SMITH, J.   The plaintiffs having never been incorporated
by the legislature, nor organized under ch. 138 of the Gen. Stats.
relating to voluntary associations, are not a corporation entitled to sue
by their corporate name.   They must therefore be regarded as copart-
ners, or joint owners, as to the property of the association.

The defendant's withdrawal from the band in December, 1872, oper-
ated as a dissolution of the copartnership as between him and the
remaining members.   His subsequent expulsion by the remaining
members can have no other legal effect.   The partnership may there-
fore be regarded as having been dissolved by both parties, so far as
Bean's relation to the rest of the members is concerned.

If Bean by his withdrawal did not surrender his interest in the musical instruments belonging to the band, then it is clear that this action cannot be maintained by the remaining members against him.

It is well settled, that while the partnership concerns are unadjusted, there is at common law no implied promise by one partner to pay anything to the other on a partnership transaction; and no action lies by either in such case, unless the transaction upon which the right of action is based has been settled between the parties, and a promise of payment made—*Odiorne* v. *Woodman*, 39 N. H. 541, and authorities cited; and with regard to tenants in common of chattels, one tenant cannot maintain trover against his co-tenant for any act less than the destruction of his interest therein, or the entire exclusion of the co-tenant from the enjoyment of his right and interest therein. *Carr* v. *Dodge*, 40 N. H. 403.

The question, then, in this case is, Had Bean any right or interest in the musical instrument which he carried away with him after he left?

The second by-law of the association is as follows: " If any member shall leave the band, he leaves all his interest in the band." The assent of the members of the band, including that of this defendant, was given to this and the other by-laws in writing, they having subscribed their names thereto. This is a valid agreement between the members, and binding upon them. The consideration upon which the promise of each is founded is the promise of the rest to do the same thing. It is like the case of a subscription paper where the several subscribers promise to contribute each a certain sum to an object which all are desirous to accomplish: the promise of each is considered as made in consideration of the promises of the others. *George* v. *Harris*, 4 N. H. 533; *Bryant* v. *Goodnow*, 5 Pick. 228. The members of this association had a common object to be attained, to wit, instruction in instrumental music,—lawful in itself and beneficial to themselves, and more readily accomplished by associating together, than separately. Upon the faith of this by-law, signed and agreed to by all, their instruments were purchased, and became the common property of the association. The retiring member cannot be said to forfeit his instrument, or his interest in all the instruments. It is rather the voluntary surrender or relinquishment of his interest in the instruments in pursuance of his written agreement, and in consideration of his retiring from the association.

It is contended, however, by the defendant, that he has not withdrawn permanently, but has only left until the band should settle his claim of $5.50, which he had presented and which the band had disallowed. But this position has the appearance of being a subterfuge. He was leader of the band, and chairman of the meeting at which it was voted not to pay his claim. He thereupon left his position as presiding officer, and withdrew from the meeting. Upon being interrogated by other members, he said he had left, and should not meet with them until his claim was settled. As the band had already voted not to pay

it, this was equivalent to saying that his action in leaving was final on his part. He took with him the instrument in suit, and has refused to meet with the members since. His language and prolonged absence, in one occupying the prominent position of leader, are capable of explanation upon no other ground than that his withdrawal was intended to be and has become permanent.

We do not attach any importance to the fact that the band voted to expel him subsequent to his leaving, so far as affecting his rights in any of the property of the association is concerned. The second by-law only applies to one who voluntarily leaves. If the withdrawal is occasioned by sickness or death, or is involuntary, it would seem to be reasonable to hold that the by-law would not in such case apply. But that question is not before the court.

By his voluntary withdrawal, then, Bean ceased to have any interest in the instruments belonging to the band, but the same became the property of the remaining members. There were then no partnership concerns to be adjusted between the parties, and he had no right to retain the cornet instrument. The demand and refusal to surrender the same are abundant evidence of a conversion by the defendant.

If the parties are regarded as tenants in common of the chattel, the evidence shows an entire exclusion by the defendant of his co-tenants from the enjoyment of their right and interest therein.

*Judgment for the plaintiffs on the report.*